**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

FRANK N. MAGID ASSOCIATES,
INC.,

               Plaintiff,

vs.

SHANNON MARRS, ELIZABETH
SHEPHERD and CHIRP RESEARCH,
LLC,

               Defendants.

SHANNON MARRS, ELIZABETH
SHEPHERD and CHIRP RESEARCH,
LLC,

               Counter Claimants,

vs.

FRANK N. MAGID ASSOCIATES,
INC.

               Counter Defendant.

No. 16-CV-198-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*      *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.*   *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . *4*

     *A.*    *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
     *B.*    *Overview of the Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*V.*     *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

    A.     *Compel Arbitration* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

         1.     *Valid Arbitration Agreement* . . . . . . . . . . . . . . . . . . . . . **7**

                a.     *Disparity in bargaining power* . . . . . . . . . . . . . . . **8**

                b.     *Substantive unfairness* . . . . . . . . . . . . . . . . . . . . . **8**

         2.     *Arbitrability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

    B.     *Dismiss Shepherd Counterclaims* . . . . . . . . . . . . . . . . . . . . . **12**

         1.     *Compulsory counterclaims* . . . . . . . . . . . . . . . . . . . . . **12**

                a.     *Same issues of fact and law* . . . . . . . . . . . . . . . . . . **13**

                b.     *Res judicata* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

                c.     *Same evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

                d.     *Logical relationship* . . . . . . . . . . . . . . . . . . . . . . . **15**

         2.     *Permissive Counterclaims* . . . . . . . . . . . . . . . . . . . . . . **16**

VI.    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**

## *I.  INTRODUCTION*

The matter before the court is Frank N. Magid Associates, LLC's ("Magid" and "Company") "Motion to Compel Arbitration of Shannon Marrs'[s] Counterclaims and Motion to Dismiss Elizabeth Shepherd's Counterclaims" ("Motion") (docket no. 43).

## *II.  RELEVANT PROCEDURAL HISTORY*

On November 29, 2016, Magid filed a Complaint (docket no. 1) asserting the following claims: (1) breach of contract against Defendant Shannon Marrs and Elizabeth Shepherd; (2) tortious interference with contractual relationships against Marrs, Shepherd and Defendant Chirp Research, LLC ("Chirp"); (3) tortious interference with prospective business advantage against all Defendants; (4) misappropriation of trade secrets in violation of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836(b)(1), against all Defendants; (5) a state law claim for misappropriation of trade secrets in violation of the Iowa Uniform Trade Secrets Act, Iowa Code Chapter 550, against all Defendants; (6) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, against Marrs and Chirp; (7) common law claims of breach of fiduciary duty and duty of loyalty against Marrs and Shepherd; (8) common law claim of inducing, aiding and abetting breach against Marrs and Shepherd; and (9) a common law claim of civil conspiracy

2

against all Defendants.

On January 26, 2017, Shepherd filed an Answer ("Shepherd Answer") (docket no. 36) denying liability, asserting affirmative defenses and alleging the following counterclaims under Iowa law: (1) breach of contract; (2) quantum meruit; and (3) an Iowa Chapter 91A claim for wages owed. On January 27, 2017, Marrs filed an Answer ("Marrs Answer") (docket no. 39) denying liability, asserting affirmative defenses and alleging the following counterclaims: (1) breach of contract; (2) quantum meruit; and (3) an Iowa Chapter 91A claim for wages owed. On February 16, 2017, Magid filed the Motion. On March 2, 2017, Marrs and Shepherd filed a Resistance to the Motion (docket no. 47). On March 9, 2017, Magid filed a Reply in Support of the Motion (docket no. 50). Neither party has requested oral argument and the court finds that oral argument is unnecessary. The Motion is fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

The court has original jurisdiction over the DTSA and CFAA claims because they arise under the United States Code. *See* 28 U.S.C. § 1331 ("The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over Magid's remaining claims because they are so related to the claims within the court's original jurisdiction that they form part of the same case or controversy. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). In other words, "the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 77 F.3d 1063, 1067 (8th Cir. 1996)

3

(alteration in original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988)). The court also has diversity jurisdiction over the claims because complete diversity exists between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States . . . .").

## IV. RELEVANT FACTUAL BACKGROUND

Accepting all factual allegations in the Answer and Counterclaims as true the relevant facts are as follows:

### A. Parties

Magid is an Iowa corporation with its principal place of business in Minneapolis, Minnesota. Complaint ¶ 2. "Chirp Research LLC is a limited liability company duly organized and existing under the laws of [Texas.]" *Id*. ¶ 3. "Marrs is a former employee of Magid, and is now" an owner and operator of Chirp. *Id*. ¶ 4. "Shepherd is a former employee of Magid, and is now employed by Chirp as a Qualitative Insights Lead." *Id*. ¶ 5. Both Shepherd and Marrs reside in Texas. *Id*. ¶¶ 4, 5.

### B. Overview of the Dispute

Magid is a "research-based strategic consulting firm." *Id*. ¶ 12. In November 2007, Magid hired Marrs "as a Managing Director of Business Development" to "establish[] and then expand[] Magid's presence in Texas." *Id*. ¶ 22. Marrs received multiple promotions while employed by Magid. *Id*. ¶ 23. In 2009, Marrs became an Executive Director; in 2012, she became a Vice President; and, in 2015, she was promoted to Senior Vice President. *See id*. As part of Marrs's 2015 promotion to Senior Vice President, she was required to sign an Employment Agreement ("Marrs Agreement") (docket no. 1-2). *Id*. ¶ 24.

In November 2011, Magid hired Shepherd as a Senior Research Analyst. *Id*. ¶ 28.

4

Shepherd reported to Marrs. *Id*. "[A]s a condition of commencing employment with Magid, Shepherd executed" an Employment Agreement ("Shepherd Agreement") (docket no. 1-3) regarding confidential information, non-competition and non-solicitation. *Id*. ¶ 29.

Pursuant to their respective agreements, both Marrs and Shepherd "agreed to maintain the confidentiality of confidential and trade secret information . . . [they] received in confidence and as Company fiduciaries," *id*. ¶ 31, "return all Company property upon their departures from Magid," *id*. ¶ 32, not solicit Magid's clients or prospects for two years and three years respectively, *id*. ¶ 33-34, and "not solicit Magid's employees" for one year and three years respectively, *id*. ¶ 35-36. The Marrs Agreement additionally required Marrs "to serve the Company faithfully . . . and to devote her full business time, attention, and efforts to the business and affairs of the Company during the term of th[e] [a]greement." *Id*. ¶ 30 (quoting Marrs Agreement at 2). The Marrs Agreement also contains an arbitration provision which states in relevant part:

> Except as provided in Paragraph 12 . . . , any claims or disputes of any nature between the parties arising from or related to the performance, breach, termination, expiration, application, or meaning of this Agreement which have not been resolved informally, shall be subject to final and binding arbitration under the then-applicable National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA").

Marrs Agreement at 6.

On May 19, 2016, Shepherd announced her resignation of employment from Magid. Complaint ¶ 41; Shepherd Answer at 19. Shepherd's last day of employment was June 2, 2016. Complaint ¶ 54. On May 23, 2016, Marrs announced her resignation from Magid. *Id*. ¶ 39. Marrs spoke with Steve Ridge, Magid's Chief Operating Officer, and informed him "that she intended to start her own market research company, but that she would honor all of her contractual obligations to Magid." *Id*. ¶¶ 25, 40; Marrs Answer

¶ 40. Marrs subsequently became an operator of Chirp. Complaint ¶ 4. Shepherd subsequently became employed by Chirp as a Qualitative Insights Lead. *Id*. ¶ 5.

Magid filed the instant action alleging that Marrs and Shepherd breached their employment agreements in several respects and violated several state and federal laws.

## V. ANALYSIS

### A. Compel Arbitration

In the Motion, Magid argues that the court should compel arbitration of Marrs's counterclaims pursuant to the arbitration provision in the Marrs Agreement. *See* Motion at 1-4. Marrs contends that the court should not compel arbitration because (1) the forum provisions are unconscionable and (2) Marrs's counterclaims do not fall within the terms of the arbitration provision. *See* Resistance at 7, 10.

The Federal Arbitration Act ("FAA") states that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, the FAA applies to any arbitration clause in a contract involving interstate commerce. *Id*.; *see also Perry v. Thomas*, 482 U.S. 483, 489 (1987). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). In the present case, the FAA applies to the Marrs Agreement because it contained a written arbitration provision, the controversy arises out of the agreement and the contract involves interstate commerce. *See* Marrs Agreement at 6.

"A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008) (citing 9 U.S.C. § 4; *MedCam, Inc. v. MCNC*, 414

6

F.3d 972, 974 (8th Cir. 2005)). When reviewing an arbitration agreement, courts consider: "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016) (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)). "There is a strong federal policy favoring arbitration." *Faber*, 367 F.3d at 1052.

### 1. Valid Arbitration Agreement

Marrs claims that "the [c]ourt should find that there is not a valid agreement to arbitrate in this case" because "[t]he [f]orum [p]rovisions are unconscionable." Resistance at 7. Marrs argues that the disparity of bargaining power and substantive unfairness of the arbitration provision "weigh in favor of finding that the arbitration provision is unconscionable." *Id*. at 8-10.

"State contract law governs whether an arbitration agreement is valid." *Quam Const. Co. v. City of Redfield*, 770 F.3d 706, 708 (8th Cir. 2014) (quoting *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 946 (8th Cir. 2001)). "A contract is unconscionable where no person in his or her right senses would make it on the one hand, and no honest and fair person would accept it on the other hand." *Bartlett Grain Co. v. Sheeder*, 829 N.W.2d 18, 27 (Iowa 2013) (quoting *C&J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 80 (Iowa 2011)). "[W]ether an agreement is unconscionable must be determined at the time it was entered." *C&J*, 795 N.W.2d at 81. Courts generally analyze the following factors of unconscionability: (1) assent; (2) unfair surprise; (3) notice; (4) disparity of bargaining power; and (5) substantive unfairness. *See Bartlett Grain*, 829 N.W.2d at 27. "Under Iowa law, the burden of proof that a particular provision or contract is unconscionable rests on the party claiming it is unconscionable." *Faber*, 367 F.3d at 1053 (citing In re *Estate of Ascherl*, 445 N.W.2d 391, 392 (Iowa Ct. App. 1989)). Marrs only asserts the factors of disparity in bargaining power and

substantive unfairness.  *See* Resistance at 7.

### a.    *Disparity in bargaining power*

Marrs points to the "disparity of bargaining power" between the parties and contends that "Magid is a large national company and Marrs did not have the ability to negotiate the Forum Provisions in the Employment Agreement."  Resistance at 8. Although disparity in bargaining power is a factor weighing in favor of finding unconscionability, "[m]ere inequality in bargaining power does not make the contract automatically unconscionable . . . and it is not enough by itself to overcome the federal policy favoring arbitration."  *Faber*, 367 F.3d at 1053 (internal citation omitted).

Marrs acknowledges that she "went through great lengths to negotiate the compensation provision in the Employment Agreement," but asserts that this "was the only provision that Magid permitted [her] to negotiate."  Affidavit of Shannon Marrs (docket no. 47-1) at 1.  The court notes that Marrs was Vice President of Magid, and thus far from an unsophisticated party.  Nevertheless, "disparity of bargaining power . . . calls for careful scrutiny of the substance of the contract."  *Faber*, 367 F.3d at 1053.  Accordingly, the court will proceed to review the substantive fairness of the Marrs Agreement.

### b.    *Substantive unfairness*

Substantive unconscionability "includes 'harsh, oppressive and one-sided terms.'" *Bartlett*, 829 N.W.2d at 27 (quoting In re *Marriage of Shanks*, 758 N.W.2d 506, 515 (Iowa 2008)).  "A provision will be invalidated if it is a 'nefarious provision, inimical to the public good.'"  *Faber*, 367 F.3d at 1053 (quoting *Home Fed. Sav. & Loan Ass'n of Algona v. Campney*, 357 N.W.2d 613, 618 (Iowa 1984)).  "However, the doctrine of unconscionability does not exist to rescue parties from bad bargains."  *C&J*, 795 N.W.2d at 80; *see also* In re *Shanks*, 758 N.W.2d at 515 ("People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain." (quoting *Smith v. Harrison*, 325

N.W.2d 92, 94 (Iowa 1982))).

Marrs argues that the "[f]orum [p]rovisions in the [e]mployment [a]greement are so substantially unfair and disadvantageous as to Marrs that a finding of unconscionability is warranted." Resistance at 8. Marrs points to the fact that "Magid can freely choose to bring a lawsuit against Marrs in three different forums but, by Magid's own contentions, Marrs can only bring her claims before an arbitrator." *Id.* at 9. Marrs does not provide, and the court is unaware, of any authority supporting her contention that Iowa law requires mutuality of obligation in arbitration clauses or that the absence thereof renders an arbitration agreement substantively unconscionable.

The court is persuaded that the Iowa Supreme Court would not require mutuality of obligation in arbitration clauses. Iowa courts "strive to give effect to all the language of a contract." *C&J*, 795 N.W.2d at 77. "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Id.*

Additionally, the Eighth Circuit has recognized "the trend established by decisions holding that consideration for a contract as a whole covers the arbitration clause." *Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 792 (8th Cir. 1998) (citing *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 452 (2d Cir. 1995) ("Most courts facing this issue have arrived at the same conclusion [that consideration for the entire contract is sufficient to support the arbitration clause].")). Accordingly, mutuality of obligation is unnecessary to support a valid arbitration provision. *See* Restatement (Second) of Contracts § 79 ("If the requirement of consideration is met, there is no additional requirement of . . . 'mutuality of obligation.'"). To hold otherwise "might risk running afoul of the strong federal policy favoring arbitration." *Barker*, 154 F.3d at 792 (alterations omitted) (quoting *Doctor's Assocs.*, 66 F.3d at 453).

The court finds that the arbitration clause is not unconscionable. First, as addressed

9

above, Marrs does not contend that the Marrs Agreement lacks consideration as a whole. *See Bartlett*, 829 N.W.2d at 23 (noting that, under Iowa law, a "valid contract must consist of an offer, acceptance, and consideration" (quoting *Margeson v. Artis*, 776 N.W.2d 652, 655 (Iowa 2009))). Second, simply because one party must arbitrate claims while the other party may choose to litigate some issues does not render the provision unconscionable. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 183 (3d Cir. 1999) ("[T]he mere fact that [a defendant] retains the option to litigate some issues in court, while the [plaintiffs] must arbitrate all claims does not make the arbitration agreement unenforceable."); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 47 n.15 (3d Cir. 1978) ("[The plaintiff]'s alternate argument is that, because [the defendant] had the option of bringing suit against [the plaintiff] in an American court, as well as invoking the arbitration clause and submitting the dispute to arbitration . . . while [the plaintiff] had no such choice, the arbitration clause . . . is unenforceable and void as contrary to public policy. This argument is without merit. We know of no such doctrine of complete mutuality as a matter of federal law . . . ."); *cf. Penn. Life Ins. Co. v. Simoni*, 641 N.W.2d 807, 812 (Iowa 2002) ("While there may be inefficiencies in requiring arbitration of some of the claims involving these parties, but not others, that is the agreement made by the parties."). Finally, the fact that Marrs is required to arbitrate her claims while Magid may choose to bring claims in court does not rise to the level of being nefarious and inimical to the public good. *See Faber*, 367 F.3d at 1052 (explaining that the court "will not extend [its] review 'to the consideration of public policy advantages or disadvantages resulting from the enforcement of the agreement'" and "[q]uestions about remedy are also outside our scope of review because they do not affect the validity of the agreement to arbitrate" (internal citations omitted)).

Accordingly, Marrs has failed to carry her burden of establishing that the arbitration provision is unconscionable.

10

## 2.    Arbitrability

Marrs also contends that her counterclaims do not fall within the terms of the arbitration provision. *See* Resistance at 10-12. Magid asserts that, pursuant to the Marrs Agreement, "an arbitrator . . . would decide disputes over arbitrability." Reply at 1.

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). "[A]n arbitration provision's incorporation of the AAA Rules—or other rules giving arbitrators the authority to determine their own jurisdiction—is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court." *Fallo*, 559 F.3d at 878.

The arbitration provision in the Marrs Agreement provide as follows:

> [A]ny claims or disputes of any nature between the parties arising from or related to the performance, breach, termination, expiration, application or meaning of this Agreement . . . shall be subject to final and binding arbitration under the then-applicable National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA").

Marrs Agreement at 6. This language, which expressly adopts the AAA Rules, clearly leaves disputes regarding the "application or meaning of th[e] Agreement" to an arbitrator. *Id.*; *see Principal Life Ins. Co. v. Caremark PCS Health, LLC*, 56 F. Supp. 3d 1013, 1019 (S.D. Iowa 2014) ("The incorporation of the AAA rules demonstrates the intent of the parties . . . to defer th[e] question [of whether the arbitration agreement applies to the dispute] to an arbitrator."). Therefore, the question of whether Marrs's claims fall within the scope of the arbitration agreement shall be left to the arbitrator.

The arbitration provision is in the Marrs Agreement, and, thus, it is subject to the FAA. Because the provision is a valid component of an enforceable contract and leaves

the issues of arbitrability to the determination of the arbitrator, the court shall grant the Motion with respect to compelling arbitration of Marrs's counterclaims.

### B. Dismiss Shepherd Counterclaims

In her Answer, Shepherd raises three counterclaims: (1) breach of contract; (2) quantum meruit; and (3) violations of Iowa Code Chapter 91A. Shepherd Answer at 19-22. Magid contends that Shepherd's "counterclaims should be dismissed for lack of subject matter jurisdiction," pursuant to Federal Rule of Civil Procedure 12(b)(1). Brief in Support of Motion (docket no. 43-1) at 4. Shepherd asserts that the court "has jurisdiction over [her] counterclaims pursuant to 28 U.S.C. § 1367(a) . . . and pursuant to [Federal Rule of Civil Procedure] 13(a)(1)." Shepherd Answer at 18.

"[A] court's subject-matter jurisdiction defines its power to hear cases." *Lightfoot v. Cendant Mortg. Corp.*, ___ U.S. ___, ___, 137 S. Ct. 553, 560 (2017). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Counterclaims may be compulsory or permissive. *See* Fed. R. Civ. P. 13(a), (b). "If a counterclaim is compulsory, the federal court will have ancillary jurisdiction over it even though ordinarily it would be a matter for a state court." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 (1971) (internal citation omitted). If a counterclaim is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" it is permissive and the court shall have supplemental jurisdiction over the claim. 28 U.S.C. § 1367(a). "Shepherd does not assert that she has an independent basis for jurisdiction . . . ." Resistance at 18.

### 1. Compulsory counterclaims

"Federal Rule of Civil Procedure 13(a) defines a counterclaim as compulsory 'if it arises out of the transaction or occurrence that is the subject matter of the opposing party's

claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.'" *Tullos v. Parks*, 915 F.2d 1192, 1195 (8th Cir. 1990) (quoting Fed. R. Civ. P. 13(a)). "Ancillary jurisdiction in federal court, which the compulsory counterclaim rule calls into play when the claim asserted by the defendant has no independent federal jurisdictional basis provides for the 'practical needs' of the 'convenience of litigants' and 'considerations of judicial economy.'" *Tullos*, 915 F.2d at 1195 (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 377 (1978)).

"Transaction" is "a word of flexible meaning" and "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship*." *Tullos*, 915 F.2d at 1195 (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)). Courts employ four "tests for determining whether the claim arose out of the same transaction or occurrence, within the meaning of Rule 13(a)." *Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 264 (8th Cir. 1979). The tests are as follows: (1) "[a]re the issues of fact and law raised by the claim and counterclaim largely the same"; (2) "[w]ould res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule"; (3) "[w]ill substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim"; and (4) "[i]s there any logical relation between the claim and the counterclaim?" *Id.*

### a. Same issues of fact and law

Shepherd's counterclaims do not raise the same issues of fact and law that are raised in Magid's claims. Although both claims arise from the employment relationship, this nexus is insufficient to render the counterclaims compulsory. Magid's claims arise out of the Shepherd Agreement, which addresses confidential information, non-competition and non-solicitation. *See generally* Shepherd Agreement. Shepherd's claims arise from two distinct commission agreements. *See* Shepherd Answer at 18-22 (referring to the "2013 Commission Agreement" and the "May 2016 Commission Agreement"). Thus,

Shepherd's counterclaims raise issues arising from distinct contractual obligations.

Shepherd contends that the issues of law and fact are the same because, "[i]n determining whether the [Shepherd Ageement] is overly broad, the fact-finder will have to determine which clients Shepherd worked with at Magid." Resistance at 17. Any assertion that the Shepherd Agreement is overly broad relates to Shepherd's defenses, rather than to Magid's claims. Shepherd's defenses cannot serve as the basis for a compulsory counterclaim. *See Tullos*, 915 F.2d at 1195 ("[A] counterclaim [i]s compulsory 'if it arises out of the transaction or occurrence that is the subject matter of the *opposing party's claim* . . . .'" (quoting Fed. R. Civ. P. 13(a)) (emphasis added)). Magid's claims against Shepherd involve tortious interference, misappropriation of trade secrets in violation of federal and state law, breach of fiduciary duty, violation of the CFAA and breach of the Shepherd Agreement. *See generally* Complaint ¶¶ 74-154. In contrast, Shepherd's counterclaims touch on work performed and compensation owed. *See* Shepherd Answer at 18-22. Although both claims involve breach of contract in the course of Shepherd's employment, they do not raise the same issues of law and fact. *See St. Jude Med. Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 594 (8th Cir. 2001) (concluding counterclaims were compulsory where defendant's "claims arose out of the distributorship agreement with [the plaintiff] and, in large part, were the mirror image of [the plaintiff's] claims against [the defendant]"). Thus, Shepherd's counterclaims are not compulsory under this test.

### b.    *Res judicata*

"Res judicata, or claim preclusion, operates to preclude a party from relitigating the same cause of action." *Wedow v. City of Kan. City, Mo.*, 442 F.3d 661, 669 (8th Cir. 2006). "Claim preclusion applies when there is a prior judgment rendered by a court of competent jurisdiction, that prior judgment was final and on the merits, and it involved the same cause of action and the same parties or privies." *Id.* "Res judicata bars claims that

were or could have been litigated in the earlier proceeding . . . ." *Id.* "Shepherd does not claim that res judicata will bar a subsequent suit of her counterclaims." Resistance at 16. Therefore, this test does not support a finding that Shepherd's counterclaims are compulsory.

### c. *Same evidence*

As noted above, Shepherd's counterclaims do not involve the same evidence as Magid's claims. Magid's claims pertain to the alleged taking and use of proprietary information. In contrast, Shepherd's counterclaims focus on work she completed and whether she was compensated for such work. Entirely different evidence is needed to support the claims and counterclaims. Thus, this test does not support a finding that Shepherd's counterclaims are compulsory.

### d. *Logical relationship*

Shepherd contends that Magid's claims and her counterclaims are "logically connected" because both "relate to [her] employment with Magid, [the Shepherd Agreement], her compensation . . . , her termination, and Magid's clients and corresponding client contracts." Resistance at 16. That both the claims and counterclaims arise out of the employment relationship is not a sufficient basis to confer federal jurisdiction in this case. Beyond the broad umbrella of the employment relationship, there is no logical connection between Shepherd's alleged misappropriation of trade secrets and interference with Magid's client relationships and Magid's alleged failure to compensate Shepherd to the extent agreed upon.

For the foregoing reasons, Shepherd's counterclaims are not compulsory.

### 2. *Permissive Counterclaims*

If a counterclaim in not compulsory it may be permissive. "[A] permissive counterclaim . . . require[s] a basis of jurisdiction independent from that supporting the main claim." *Shelter Mut. Ins. Co. v. Pub. Water Supply Dist. No. 7 of Jefferson Cty.,*

*Mo.*, 747 F.2d 1195, 1197 (8th Cir. 1984). In cases where "the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Claims within the action are part of the same case or controversy if they derive from a common nucleus of operative fact." *OnePoint Sols., LLC. v. Borchert*, 486 F.3d 342, 350 (8th Cir. 2007) (internal quotation marks omitted) (quoting *Myers v. Richland Cty.*, 429 F.3d 740, 746 (8th Cir. 2005)). "A plaintiff's claims derive from a common nucleus of operative fact if the 'claims are such that he would ordinarily be expected to try them all in one judicial proceeding.'" *Id.* (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

A district court "may decline to exercise supplemental jurisdiction over a claim . . . if (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has dismissed all claims over which it has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c) (formatting omitted). A court can only "decline[] to exercise supplemental jurisdiction . . . after considering the four factors enumerated in the federal supplemental-jurisdiction statute or after determining that the abstention doctrine applies." *Wong v. Minn. Dep't of Human Servs.*, 820 F.3d 922, 933 (8th Cir. 2016) (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 174 (1997)).

Shepherd claims that the common nucleus of operative fact "is Shepherd's relationship with Magid's clients and whether Shepherd was paid for working with them and should be prohibited from working with them in the future." Resistance at 14-15. However, Shepherd's counterclaims relating to her compensation and work performed for

various clients are not tied to Magid's claims involving tortious interference, misappropriation of trade secrets in violation of federal and state law, breach of fiduciary duty, violation of the CFAA and breach of the Shepherd Agreement. *See generally* Complaint at 20-34; *see also Equus Comput. Sys. Inc. v. N. Comput. Sys. Inc.*, No. 01-657 DWF/AJB, 2001 WL 1640098, at *1-3 (D. Minn. Nov. 14, 2001) (declining to exercise supplemental jurisdiction over breach of contract and promissory estoppel counterclaim where complaint alleged defendants had misappropriated trade secrets, violated the CFAA, breached a duty of loyalty and tortious interference with prospective contracts and counterclaims alleged breach of contract and compensation owed). Accordingly, Shepherd has failed to demonstrate that the court should exercise supplemental jurisdiction over the counterclaims. Because Shepherd's counterclaims are not compulsory and lack an independent basis for jurisdiction, the court shall grant the Motion with respect to dismissal of Shepherd's counterclaims.

## VI. CONCLUSION

For the foregoing reasons, the Motion (docket no. 43) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 20th day of July, 2017

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

17